UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cv-109

| | | |
|---|---|---|
| ERIC OLLILA, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| Vs. | ) ) | ORDER |
| BABCOCK & WILSON ENTERPRISES, INC., E. JAMES FERLAND, AND JENNY L. APKER, | ) ) ) | |
| Defendants. | ) ) | |

**THIS MATTER** is before the Court on defendants' Motion to Dismiss Plaintiff's Second Amended Consolidated Complaint for Violations of Federal Securities Law. Having considered defendants' motion and reviewed the pleadings, the court enters the following Order.

**I.     Background**

Defendant Babcock & Wilson Enterprises, Inc. ("B&W") is a technology-based provider of fossil and renewable power generation equipment; Defendant Ferland is B&W's chairman and CEO, and Defendant Apker is B&W's CFO. B&W specializes in technology and engineering for power generation and various other applications, as well as procurement, erection, specialty manufacturing of equipment, and other related services. In June 2016, B&W reorganized into three reportable segments: Power, Renewable, and Industrial, with financial reporting for each of the new divisions beginning in the third quarter of 2016.

This matter is a securities class action brought against defendants on behalf of a class consisting of all persons and entities who purchased B&W publicly-traded common stock on the

-1-

New York Stock Exchange ("NYSE") or other U.S. exchanges or in a U.S. transaction between June 17, 2015 and August 9, 2017. The action arises under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), as well as SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

Essentially, plaintiff contends that defendants' public statements regarding the value and growth prospects of B&W's Renewable segment contrast sharply with defendants' knowledge of an array of design and construction problems at various Renewable projects. In doing so, plaintiff argues that defendants have knowingly and recklessly disregarded contradictory information at the time of their statements, and in doing so misrepresented the performance on key contracts, the strength of their backlog, and internal control deficiencies. As such, plaintiff contends that defendants have deliberately misled plaintiff and the class to their detriment. In response, defendants filed the instant motion to dismiss and argue for dismissal on several grounds.

**II.   Standard of Review**

A motion to dismiss "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. Fed. R. Civ. P. 8(a)(2). Such statement does not require "specific facts," but need only give defendants "fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Twombly, 550 U.S. at

544). For purposes of the motion, the factual allegations in the complaint are accepted as true and viewed in the light most favorable to the non-moving party, Coleman v. Md. Court of Appeals, 6266 F.3d 187, 189 (4th Cir. 2010), though the court need not accept "unwarranted inferences" or "unreasonable arguments." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). Finally, "[a] Rule 12(b)(6) motion 'does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" Pisgah Laboratories, Inc. v. Mikart, Inc., 2015 WL 996609, at *2 (W.D.N.C. Mar. 5, 2015) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)).

### III. Discussion

In support of their motion to dismiss, defendants argue that: (1) plaintiff has failed to plead both a strong inference of *scienter* and an actionable misstatement or omission; (2) that mere corporate mismanagement is not actionable under securities laws; and (3) that the complaint fails to state a proper claim for "control person liability" to attach. The court will consider each argument in turn.

*A. Scienter*

Defendants argue that plaintiff failed to plead a strong inference of *scienter*, as plaintiff did not allege actual knowledge or severe recklessness. Defendants also argue that the allegations from confidential informants do not support *scienter*, and there are more compelling inferences of non-fraudulent intent.

*Scienter* is adequately pled where "a reasonable person would deem the inference of *scienter* cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 324 (2007); Zak v. Chelsea

Therapeutics Int'l, Ltd., 780 F.3d 597, 606 (4th Cir. 2015). Allegations need not be "irrefutable, i.e. of the 'smoking gun' genre," nor even be "the most plausible of competing inferences." Tellabs, 551 U.S. at 324. Specifically, *scienter* is pled by setting forth facts "that constitute circumstantial evidence of either reckless or conscious behavior" and "the adequacy of the *scienter* allegations is to be measured by the facts collectively alleged in the complaint." Kiken v. Lumber Liquidators Holdings, Inc., 155 F. Supp. 3d 593, 601 (E.D.Va. 2015). Allegations are thus to be evaluated "holistically" and afforded "the inferential weight warranted by context and common sense." Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc., 576 F.3d 172, 183 (4th Cir. 2009); see also Ottman v. Hanger Orthopedic Grp., Inc., 353 F.3d 338, 345-46 (4th Cir. 2003) ("[C]ourts should not restrict their *scienter* inquiry by focusing on specific categories of facts, such as those relating to motive and opportunity, but instead should examine all of the allegations in each case to determine whether they collectively establish a strong inference of *scienter*"); KBC Asset Mgmt. NV v. 3D Sys. Corp., 2016 WL 3981236, at *8 (D.S.C. July 25, 2016) (evidence should be viewed holistically "instead of each piece being scrutinized in isolation"). In analyzing *scienter* allegations, "the absence of a motive allegation is not fatal." Tellabs, 551 U.S. at 325; accord Ottman, 353 F.3d at 346.

First, the court considers whether plaintiff made a sufficient pleading of actual knowledge or severe recklessness. Defendants argue that plaintiff is asking the court to infer fraud by hindsight, and that no facts are pled as to what defendants knew at the time they made alleged misstatements. In doing so, defendants contend that plaintiff has failed to plead a requisite mental state for Defendants Ferland and Apker, and by extension none of their knowledge could be imputed to defendant B&W. See Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1254 (11th Cir.

2008); Yates v. Municipal Mortg. & Equity, LLC, 744 F.3d 874, 885 (4th Cir. 2014); Bondali v. Yum! Brands, Inc., 620 F. App'x 483, 493 (6th Cir. 2015).

However, plaintiff's Complaint includes allegations supported by a host of confidential witnesses that Defendants Ferland and Apker, as well as other members of defendant B&W's senior management, were aware of significant problems within the Renewable segment of the business. For example, plaintiff alleges that B&W management had to authorize a redesign of the entire piping system at one project site, requiring 40,000 engineering hours instead of the original 5,000 that defendants budgeted for, along with diverting a number of engineers from other projects; in doing so, plaintiff alleges that such an expansive project and redesign supports that defendants knew of issues that they did not properly report to the investing public. Furthermore, the pleadings include allegations that a variety of unfavorable monthly reports were regularly provided to senior management officers, including a Monthly Management Report that highlighted specific issues at one project site. Interpreted in the light most favorable to plaintiff, these factors at least suggest that defendants knew or recklessly disregarded information about project status, delays, and problems within the Renewable segment. Plaintiff alleges that in spite of this, a variety of statements were made by defendants that stand in stark contrast to that knowledge, including statements about how a given incident was isolated to one site even though defendants allegedly knew of four others or how Defendants Ferland and Apker purportedly knew about issues at certain projects because they visited the sites themselves to investigate, yet did not properly report on the issues facing those projects.

While defendants contend that such reports are insufficient on their own, Lipton v. Pathogenesis Corp., 284 F.3d 1027, 1036 (9th Cir. 2002), the Court finds that, in conjunction with

averments of confidential witnesses who helped to prepare them and provided specific details, plaintiff appears to have met his burden of pleading a strong inference of *scienter* by pleading actual knowledge or severe recklessness. While plaintiff may not be able to show smoking gun documentation that defendants Ferland and Apker explicitly knew of these issues as they made public statements, plaintiffs have sufficiently alleged that they had access to information on such issues. See Novak v. Kasaks, 216 F.3d 300, 308 (2d Cir. 2000) (recklessness sufficiently pled when plaintiffs allege "defendants' knowledge of facts or *access to information contradicting their public statements*") (emphasis added); see also Fla. State Bd. Of Admin. v. Green Tree Fin. Corp., 270 F.3d 645, 665 (8th Cir. 2001); Epstein v. World Acceptance Corp., 203 F. Supp. 3d 655, 671 (D.S.C. 2016) (factors indicating *scienter* include "Defendants' close monitoring of the Company's day-to-day business and corporate practices" and "accounts from Plaintiff's confidential sources regarding the business culture"). In doing so, plaintiff has made sufficient allegations of corporate *scienter* to survive the instant motion. See Kiken, 155 F. Supp. 3d at 606 ("If the defendant is a corporation, the plaintiff must allege facts that support a strong inference of *scienter* with respect to at least one authorized agent of the corporation"); KBC, 2016 WL 3981236, at *11 ("[C]orporate liability derives from the actions of its agents") (quotations omitted). As plaintiff has successfully pled *scienter* for Defendants Ferland and Apker, as well as other senior management, such *scienter* may thus be imputed to defendant B&W.

The Court is also not persuaded at this stage by defendants' contention that more compelling inferences of non-fraudulent intent exist. Defendants argue that the most plausible inference is that defendants expected to continue their past track record of success with Renewables projects, as statements of optimism in such a backdrop are "genuine and neither

intentionally false nor reckless." In re Swisher Hygiene, Inc., 2015 WL 4132157, at *12 (W.D.N.C. July 8, 2015). Where an innocent intent is the most plausible inference, *scienter* is not justified. Yates, 744 F.3d at 894; Cozzarelli v. Inspire Pharm., Inc., 549 F.3d 618, 624 (4th Cir. 2008) (holding that "when the facts as a whole more plausibly suggest that the defendant acted innocently—or even negligently—rather than with intent or severe recklessness, the action must be dismissed"). Defendants also suggest that allegations of motive are conspicuously lacking, and that plaintiff appears to be claiming that defendants' motive was to set themselves up for failure for no reason at all.

However, plaintiff's pleading of recklessness above is satisfactory to survive a motion to dismiss and finds the allegations sufficiently lay out an inference of *scienter* just as plausible as defendants' competing explanations. Furthermore, plaintiff's allegations need not be "the most plausible of competing inferences." Tellabs, 551 U.S. at 324. And while it is true that plaintiff has yet to provide a strong explanation of what motivated defendants' alleged obfuscation of what was supposedly occurring in the field in favor of a more favorable report to shareholders than the facts would support, "the absence of a motive allegation is not fatal." Id. at 325; accord Ottman, 353 F.3d at 346. Ultimately, the Court finds that plaintiff has allegations of *scienter* are both plausible and sufficient to survive a Rule 12(b)(6) motion to dismiss, and will thus deny defendants' motion on this basis.

*B. Actionable misstatement or omission*

Next, defendants argue the Complaint fails to plead an actionable misstatement or omission. Additionally, defendants contend that any potential misstatements are inactionable due to a safe harbor barring plaintiff's claims as forward-looking statements. Further, defendants argue

their statements are no more than puffery, and that statements of optimism and opinion are similarly inactionable.

To state a claim under Section 10(b), a plaintiff must allege an actionable misrepresentation or omission of material fact. Yates, 744 F.3d at 884. A securities fraud complaint adequately pleads a false or misleading statement by "specify[ing] each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). If an allegation is made "on information and belief," "the complaint shall [also] state with particularity all facts on which that belief is formed." Id. Further, "'any statement or omission of fact must be material,' meaning objectively significant to a reasonable investor." Epstein v. World Acceptance Corp., 2015 WL 2365701, at *5 (D.S.C. May 18, 2015) (quoting Longman v. Food Lion, Inc., 197 F.3d 675, 682-83 (4th Cir. 1999)). It is important to note that a contrast between statements and performance is not necessarily indicative of fraud. DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990) (holding that if a company "bathes itself in a favorable light" and then later must "disclose that things are less rosy," that alone does not signify "that the difference must be attributable to fraud."). "Determining whether the complaint satisfies this standard necessarily entails a case-by-case assessment of the complaint as a whole." Teachers' Ret. Sys. of LA v. Hunter, 477 F.3d 162, 174 (4th Cir. 2007). "[T]he trier of fact decides whether a public statement is misleading." Kiken, 155 F. Supp. 3d at 601.

Courts will also typically reject attempts to claim fraud via "Monday morning quarterbacking" and dismiss allegations that attempt to prove fraud using only the benefit of hindsight. See Southeastern Pa. Transp. Authority v. Orrstown Fin. Servs., Inc., 2015 WL 3833849 (M.D. Pa. June 22, 2015) (holding that if allegations are "improperly based on hindsight," they are

"inactionable"). However, it is not fraud by hindsight if allegations forecast evidence that defendants' statements were false or misleading at the time they were made. Miss. Pub. Emp. Ret. Sys. V. Boston Sci. Corp., 523 F.3d 75, 91 (1st Cir. 2008) (rejecting fraud by hindsight where defendants allegedly knew earlier what they chose not to disclose until later); see also Lormand v. US Unwired, Inc., 565 F.3d 228, 254 (5th Cir. 2009) (rejecting fraud by hindsight as allegations do not "infer earlier knowledge based only on the situation that later came to pass"); accord In re Genworth Fin. Inc. Sec. Litig., 103 F. Supp. 3d 759, 777 (E.D. Va. 2015). Further, courts "must be cautious" in applying fraud by hindsight to dismiss a case, as its effect at this stage "is to cut off the case as a matter of law, without further factual development." Id.

Here, the Court finds plaintiff's allegations are sufficiently pled to survive a motion to dismiss. Plaintiff has alleged that statements were misleading due to then-existing material facts that contradicted such statements. For example, defendants stated that a "strong backlog" was providing momentum and growth going forward, but plaintiff alleges defendants were aware of significant, undisclosed problems and delays. Such allegations have been found satisfactory as misleading in similar cases. See Berson v. Applied Signal Tech., Inc., 527 F.3d 982, 990 (9th Cir. 2008) (upholding allegations that reported backlog was materially false and misleading); KBC, 2016 WL 3981236, at *5 (holding that a statement regarding a "healthy backlog" of inventory that company was later forced to write-down was actionable as defendants failed to "inform fully investors of its inventory-related difficulties"). Other allegations involve defendants' statements touting performance on Renewable projects that are contradicted by undisclosed facts, such as a representation that defendant B&W continues to perform well on projects, despite awareness of problems at project sites, including design problems, lengthy delays, and poor subcontractors. See

In re Comp. Scis. Corp. Sec. Litig., 890 F. Supp. 2d 650, 668 n.21 (E.D. Va. 2012) (upholding allegations that defendants misrepresented and failed to disclose material information about progress in performing substantial contract). Such representations are augmented by the testimony of confidential witnesses responsible for Renewable segment projects who detailed the substantial and reoccurring nature of problems with the projects, which potentially renders defendants' statements materially misleading when they were made. See Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 44 (2011) (disclosure is required "when necessary to make . . . statements made, in the light of the circumstances under which they were made, not misleading"); Libon v. Infineon Techs., AG, 2006 U.S. Dist. LEXIS 76430, at *20 (E.D. Va. Aug. 7, 2006) (when defendant makes a disclosure, "there is a duty to make it complete and accurate"). The Court is thus unpersuaded by defendants' arguments that these allegations constitute fraud by hindsight.

The Court has also considered the allegations in the context of the Reform Act's safe harbor provision. Specifically, a defendant shall not be liable for an oral or written forward-looking statement if the statement is (1) identified as forward-looking and (2) accompanied by "meaningful cautionary statements identifying important factors that could cause actual results to differ materially." 15 U.S.C. § 78u-5(c)(1)(A)(i). In other words, if appropriate cautionary language is used, claims based on forward-looking statements must be dismissed. See Plymouth Cnty. Ret. Ass'n v. Primo Water Corp., 966 F. Supp. 2d 525, 550 (M.D.N.C. 2013). However, the safe harbor "does not protect representations of current or historical fact." In Re Ambac Fin. Grp., Inc. Sec. Litig., 693 F. Supp. 2d 241, 272 n.36 (S.D.N.Y. 2010); cf. Malone v. Microdyne Corp., 26 F.3d 471, 479-80 (4th Cir. 1994) ("Misstatements or omissions regarding actual past or present facts are far more likely to be actionable than statements regarding projections of future performance");

Comp. Scis., 890 F. Supp. 2d at 668 n.21; In re Constellation Energy Grp., Inc., 738 F. Supp. 2d 614, 626 (D. Md. 2010).

If a statement is a mix of both forward-looking and present or past facts, it is taken out of the safe harbor with respect to the parts of the statement that are not forward-looking. Genworth, 103 F.Supp.3d at 789 ("[A] mixed present/future statement is not entitled to the safe harbor with respect to the part of the statement that refers to the present"); In re Regeneron Pharms., Inc. Sec. Litig., 2005 WL 225288, at *13 (S.D.N.Y. 2005) ("Statements that might arguably have some forward-looking aspect are unprotected by the PSLRA safe harbor provision to the extent that they are premised on representations of present fact"). Additionally, cautionary language is meaningless if it warns only of risks which have already materialized, or if defendants knew their statements were false or misleading when made. Epstein, 2015 WL 2365701, at *6 (statements are not protected by the safe harbor if risk disclosures "purport to warn investors of risks concerning [Defendants'] practices of which Defendants were already aware" (citing Raab v. Gen. Physics Corp., 4 F.3d 286, 289 (4th Cir. 1993)); In re Lab Corp. of Am. Holdings Sec. Litig., 2006 WL 1367428, at *3 (M.D.N.C. May 18, 2006).

Here, some of defendants' statements may be protected by the safe harbor, but a fair number are clearly not. For example, one of plaintiff's allegations is based on statements by defendants concerning company backlog that contained cautionary language, such as how backlog "may not be a reliable indicator of future revenues or earnings." However, plaintiff alleges that defendant failed to disclose that defendant B&W's backlog had already been adversely affected by lack of operational capability and various issues impacting Renewable projects. Such an allegation would likely take defendants' statement out of the safe harbor entirely, as the risks

-11-

defendants warned of had already been realized. See Epstein, 2015 WL 2365701, at *6; City of Ann Arbor Emps.' Ret. Sys. V. Sonoco Prods. Co., 827 F. Supp. 2d 559, 576 (D.S.C. 2011) (no safe harbor where "[d]efendants knew that the specific risks and uncertainties stated to be 'potential' in their cautionary language had already been realized"); Genworth, 103 F. Supp. 3d 759 at 790 (holding that when plaintiff has shown adequate evidence that company was using outdated data to support its cautionary statements, the court will not determine whether cautionary language was meaningful at the motion to dismiss stage). Ultimately, while some statements may indeed have appropriate cautionary language or be entirely forward-looking, the Court declines to examine them in full at this stage, as "the adequacy of cautionary language is a question of fact, and, typically, is not a question to be resolved on a motion to dismiss." Lefkoe v. Jos. A. Bank Clothiers, 2007 WL 6890353, at *5 n. 10 (D. Md. Sept. 10, 2007). It is enough to say that the pleadings contain sufficient actionable statements to survive a Rule 12(b)(6) motion.

The Court has also considered defendants' argument that their statements are those of optimism and opinion and are thus inactionable. Loose optimistic statements, sometimes referred to as "puffery," cannot form the basis of a securities claim. Raab, 4 F.3d at 289. A statement is "puffery" if it is "a certain kind of rosy affirmative commonly heard from corporate managers and familiar to the marketplace." Phillips v. Triad Guar., Inc., 2015 WL 1457980, at *8 (M.D.N.C. March 30, 2015) (citations omitted). Courts will not impose liability on such "loosely optimistic statements [because they] are so vague, so lacking specificity, or so clearly constituting the opinions of the speaker, that no reasonable investor could find them important to the total mix of information available." Id.

Once again, the Court is not persuaded by defendants' arguments at this stage. Plaintiff's allegations generally involve statements which are not so vague as to constitute puffery, but instead "are reasonably understood to rest on a factual basis that justifies them as accurate, the absence of which renders them misleading." Virginia Bankshares, Inc. v. Sandberg, 501 U.S. 1083, 1093 (1991). For example, plaintiff alleges that defendants called problems at the Copenhill project site an isolated issue, even though they were already aware that four other sites suffered from similar piping issues. The Court cannot conclude at this point that such a statement would be puffery. And even if some statements may appear to be puffery, that is not enough; while courts may determine on a motion to dismiss that a given statement constitutes puffery, it should only do so if "no relief could be granted under any set of facts." Nutrition & Fitness, Inc. v. Mark Nutritionals, Inc., 202 F. Supp. 2d 431, 436 (M.D.N.C. 2002) (quoting Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 245-46 (9th Cir. 1990) (affirming dismissal because a statement could *only* be interpreted as puffery)).

Similarly, defendants' argue that plaintiff's allegations focus on inactionable opinions, as opinions are only actionable if defendants "did not believe what they said they believed." Longman v. Food Lion, Inc., 197 F.3d 675, 683 (4th Cir. 1999) (citing Virginia Bankshares, 501 U.S. at 1091). Defendants argue that many of the statements are prefaced with "we believe" or "we think" and are thus non-actionable. However, plaintiff has sufficiently alleged that these "opinions" could not have been "sincerely held" given defendants' contemporaneous knowledge of problems within the Renewable division. Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund, 135 S. Ct. 1318, 1321 (2015). As plaintiff alleges that they were not sincerely held, they are actionable. Id.; see also In re Petrobras Sec. Litig., 116 F. Supp. 3d 368, 380-81 (S.D.N.Y. 2015) (upholding

allegations that opinions were materially false or misleading because "at the time the Company's management was professing its opinion that the company's internal controls were effective . . . management was well aware of the extensive corruption in the Company's procurement activities"). Thus, the Court will not dismiss on this basis.

### C. *Corporate mismanagement*

Defendants argue that plaintiff's claim is not actionable under federal securities laws, as "claims that constitute no more than internal corporate mismanagement are not actionable under the securities laws." Santa Fe Indus. Inc. v. Green, 430 U.S. 462 (1977) (internal quotations omitted). However, the Court finds that, by claiming fraud, plaintiff has pled more than mere internal mismanagement as various courts recognize that pleading lies and omissions raises a claim above internal mismanagement and into the realm of securities fraud. See Freudenberg v. E*Trade Fin. Corp., 712 F.Supp.2d 171, 193 (S.D.N.Y. 2010) ("Because Plaintiffs allege that Defendants intentionally misled the public, rather than simply making bad business decisions, Plaintiffs have pled more than mere mismanagement."); Fidel v. AK Steel Holding Corp., 2002 WL 31545952, at *5 (S.D. Ohio Sept. 19, 2002) ("[S]everal courts have recognized a securities fraud claim where the plaintiff alleges that the defendant made certain statements despite knowing that existing mismanagement made those statements false or misleading."); In re Sirrom Capital Corp. Sec. Litig., 84 F.Supp.2d 933, 941 (M.D. Tenn. 1999). As already stated, the Court has found that plaintiff has properly pled *scienter* and actionable misstatements and omissions; as such, plaintiff's allegations go beyond mere internal mismanagement, and the Court will thus not dismiss plaintiff's claims on this basis.

*D. Control Person*

Finally, defendants argue that, since plaintiff has failed to state a primary claim for securities fraud under Section 10(b), control person liability cannot attach. <u>In Re Inspire Pharms., Inc. Secs. Litig.</u>, 515 F.Supp.2d 631, 641 (M.D.N.C. 2007). However, as this Court has found above that plaintiff has satisfactorily pled a claim for securities fraud under Section 10(b), control person liability may exist. As defendants made no other argument to justify dismissal, the Court will not dismiss plaintiff's claims on this basis.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Motion to Dismiss Plaintiff's Second Amended Consolidated Complaint for Violations of Federal Securities Law (#53) is **DENIED**. Defendants shall Answer the Second Amended Consolidated Complaint within 14 days.

Signed: February 8, 2018

Max O. Cogburn Jr.
United States District Judge